J-S14003-25                    2025 PA Super 113

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ZACHARY THOMAS BRANDT :
:
Appellant : No. 2173 EDA 2024

Appeal from the Judgment of Sentence Entered July 18, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0007019-2021

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.: **FILED MAY 29, 2025**

Zachary Thomas Brandt ("Appellant") appeals from the Judgment of Sentence entered on July 18, 2024, in the Montgomery County Court of Common Pleas, of 54 months to 120 months of incarceration after a jury found him guilty of, *inter alia*, Rape.[1] He challenges the denial of his Motion to Dismiss filed pursuant to Pa.R.Crim.P. 600. After careful review, we affirm.

We glean the following procedural history from the certified record, including the trial court's opinion. *See* Tr. Ct. Op., dated 10/28/24.[2] On October 27, 2021, the Commonwealth charged and arrested Appellant with one count each of Rape and Sexual Assault, and two counts each of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(3) (Rape of an unconscious individual).

[2] As the facts underlying Appellant's convictions are immaterial to the issue raised in this appeal, we provide only the relevant procedural history.

Aggravated Indecent Assault and Indecent Assault.[3]  Appellant immediately posted bail on October 28, 2021.  The court scheduled his preliminary hearing for November 8, 2021, but *sua sponte* continued it to November 29, 2021.  On November 29, 2021, Appellant waived his preliminary hearing, and the magisterial district court transferred the case to the Montgomery County Court of Common Pleas on December 27, 2021.  On January 11, 2022, Appellant's counsel, Timothy Woodward, Esq., entered his appearance and Appellant waived his formal arraignment.

The Commonwealth filed the criminal information on June 2, 2022.  "That same day, the Commonwealth also emailed discovery to [A]ttorney Woodward at tw@timwoodwardlaw.com.  The Commonwealth received no indication that the email had not been delivered."  Tr. Ct. Op. at 9, citing N.T. Motion, 10/16/23, at 96.

On January 11, 2023, the court administrator's office issued a notice scheduling the matter for a pre-trial conference on February 13, 2023.

> Around that same time, Deputy District Attorney Brianna Ringwood, the chief of professional standards for the District Attorney's Office, was conducting case reviews with the assistant district attorney then assigned to this case, Emily D'Aguanno, and both noticed that a set of photographs and a toxicology report were not in the District Attorney's file.  DDA Ringwood responded by sending an email to [A]ttorney Woodward on January 30, 2023, that, *inter alia*, asked him to confirm he previously had received the discovery emailed back in June 2022 and informed him that

---

[3] 18 Pa.C.S. §§ 3121(a)(3), 3124.1, 3125(a)(1), 3125(a)(4), 3126(a)(4), and 3126(a)(1), respectively.

certain photographs and a toxicology report not included in the initial discovery had been requested from the Pennsylvania State Police. DDA Ringwood sent the email to the tw@timwoodwardlaw.com address and received no "bounceback" email indicating it had not been delivered.

The following day, DDA Ringwood recalled that she previously had emailed with [A]ttorney Woodward using a different email address, which was identified as timwoodwardlaw@me.com. DDA Ringwood then re-sent her January 31 email to the @me address. She received a reply from [A]ttorney Woodward through the @me address on February 1, 2023, indicating he had not received any discovery. DDA Ringwood responded by instructing a member of the District Attorney's Office to forward discovery to [A]ttorney Woodward at the @me address.[6]

> [6] Attorney Woodward testified that he previously had used the email address to which the District Attorney's Office originally sent discovery [but h]e could not recall specifically when he switched to the @me address, but believed it was "sometime around COVID." He further testified that during his active representation of defendant, he had not requested discovery from the Commonwealth.

Tr. Ct. Op. at 10 (citations to notes of testimony omitted).

On February 6, 2023, Thomas C. Egan, III, Esq., entered his appearance as Appellant's co-counsel. On February 13, 2023, at the pre-trial conference, Appellant requested a continuance.[4] "The court also ordered that day that all

---

[4] At that pre-trial conference, following Appellant's request for a continuance, Appellant signed, at the behest of the court, a waiver of his Rule 600 rights. Based on our review of the record, and the fact that the Commonwealth did not raise this waiver at the Rule 600 hearing, we conclude the waiver pertained only to the period between the court's granting of Appellant's request for a continuance on February 13, 2023, and the next court date, April 26, 2023. *Commonwealth v. Brown*, 875 A.2d 1128, 1135 (Pa. Super. 2005)(concluding that there are no formal requirements for a Rule 600 waiver if the record indicates it was an informed and voluntary decision of the
*(Footnote Continued Next Page)*

discovery be passed to [A]ttorney Egan. The Commonwealth forwarded discovery to [A]ttorney Egan on March 15, 2023." *Id*.

> A second [Pre-trial Conference] occurred on April 26, 2023, at which time the case was placed on the court's Call of the Trial List ("COTL"). Court administration subsequently issued a notice on August 8, 2023, scheduling the case for a COTL on August 29, 2023.

*Id.* at 11.

On August 18, 2023, Appellant filed a Rule 600 Motion to Dismiss. On September 21, 2023, Appellant filed another Rule 600 Motion. On September 26, 2023, and October 16, 2023, the court held a hearing on Appellant's motions to dismiss, at which the Montgomery County Deputy Court Administrator, Lauren Heron, "testified credibly" about the extensive backlog of cases that existed after Appellant's case arrived from the Municipal Court on December 27, 2021, which was a result of the court's COVID-19 emergency shutdown. She also testified about the court administration's methodical protocol for progressing through the backlog and the manner in which it scheduled pre-trial conferences. She noted that because Appellant was never in custody, the court clerk put his case on "the no incarcerated list, which we run docket by docket number, oldest docket number to newest docket number." Tr. Ct. Op. at 7 (quoting N.T., 10/16/23, at 20-22). In addition, Deputy District Attorney Thomas W. McGoldrick "testified credibly that once

_____

defendant and noting "the Commonwealth has the burden of establishing any [Rule 600] waiver.") (citation omitted)).

staff were permitted to return to the courthouse, they were faced with a 'mountain of cases to deal with, much more than usual.'" Tr. Ct. Op. at 11, quoting N.T. Motion, 9/25/23, at 63. Mr. McGoldrick further testified that "[a]lthough . . . the existence of this case was after the pandemic, the problem caused by the pandemic was still there while this case existed. The backlog that was created, we're still dealing with it. It hasn't gone away . . . the backlog caused by the pandemic was unprecedented and it was enormous and we have been chipping away at it since we were allowed back into the court house." Tr. Ct. Op. at 11-12 (quoting N.T. "Motion," at 76-78).

Following the hearing, the court granted the parties 15 days to file briefs and thereafter continued its disposition of the Rule 600 motions. On November 27, 2023, the court denied the motions.

On April 15, 2024, the case proceeded to trial after which the jury found Appellant guilty of the above charges. The court sentenced him to 54 to 120 months' incarceration followed by three years' probation for the Rape conviction.[5] Appellant did not file a post-sentence motion.

Appellant filed a notice of appeal and both he and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following question for our disposition:

_____

[5] The remaining convictions merged with the Rape conviction for purposes of sentencing.

Did the lower court err in denying defendant's Motion to Dismiss Pursuant to Pa.R.Crim.P. 600 where the Commonwealth failed to establish its due diligence in bringing defendant's case to trial?

Appellant's Br. at 3.

We review the denial of motions seeking dismissal based on a violation of Pa.R.Crim.P. 600 for an abuse of discretion. *Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Thompson*, 93 A.3d 478, 486 (Pa. Super. 2014) (citation omitted).

Our scope of review "is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court." *Id*. (alterations and citation omitted). Additionally, we "must view the facts in the light most favorable to the prevailing party." *Id*. (citation omitted).

Rule 600 requires the Commonwealth to bring a defendant to trial within 365 days of the filing of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a); *Commonwealth v. Lear*, 325 A.3d 552, 560 (Pa. 2024).

> Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

***Commonwealth v. Graves***, 328 A.3d 1005, 1008 (Pa. Super. 2024), *reargument denied* (Jan. 31, 2025) (citation omitted). Significantly, "the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth." ***Thompson***, 93 A.3d at 486-87 (citation omitted). Thus, "[s]o long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime." ***Id.*** at 486 (citation omitted).

Where a defendant is not brought to trial within that 365-day period, a defendant may seek dismissal of the charges. "[T]o obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges." ***Commonwealth v. Hyland***, 875 A.2d 1175, 1189 (Pa. Super. 2005).

The first step in conducting a Rule 600 analysis is to calculate the "mechanical run date." ***Commonwealth v. Lynn***, 815 A.2d 1053, 1056 (Pa. Super. 2003). "The mechanical run date is the date by which the trial must commence under Rule 600. It is calculated by adding 365 days ... to the date on which the criminal complaint is filed." ***Id.*** (citation omitted). If a defendant is not brought to trial until after the mechanical run date, and files a Rule 600 motion to dismiss, "the court must assess whether there is excludable time and/or excusable delay." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1241 (Pa. Super. 2004) (*en banc*).

- 7 -

Rule 600(C) provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. **Any other periods** of delay shall be excused from the computation." Pa.R.Crim.P. 600(C)(1) (emphasis added). When delays are not caused by the Commonwealth, those periods of time, known as "excludable" periods, are added to the "mechanical run date" to produce the "adjusted run date." *Lear*, 325 A.3d at 560 (citation omitted). The adjusted run date provides "the deadline for the Commonwealth to bring the defendant to trial under Rule 600." *Id*. "[T]ime attributable to the normal progression of the case simply is not 'delay' for purposes of Rule 600[] and, thus, counts toward the 365-day deadline." *Commonwealth v. Walker*, 331 A.3d 43, 47 (Pa. Super. 2025) (citing *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (internal quotation marks and brackets omitted).

To determine whether delays are excludable from the Rule 600 calculation, the rule requires that the cause of the delay must first be determined before courts may consider whether the Commonwealth acted with due diligence throughout the life of the case. *Walker*, 331 A.3d at 46. "[I]t is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation." *Lear*, 325 A.3d at 560 n.7.

"Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." **Walker**, 331 A.3d at 46 (citation omitted).

With respect to delays caused by court congestion, a "limited exception to the general rule" applies in cases involving certain "judicial delay." **Lear**, 325 A.3d at 561. Where delay occurs because of a single judge's scheduling conflicts, the Commonwealth must demonstrate "that it complied with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case." **Commonwealth v. Harth**, 252 A.3d 600, 603 (Pa. 2021). However, where the cause of the delay is attributable to matters outside the Commonwealth's control, such as court closures during a pandemic as well as other "medical-, weather-, and security-related emergencies," **Lear** provides that these delays constitute "other periods of delay" for which the Commonwealth does not need to prove due diligence. **Lear**, 325 at 563 n.9. The **Lear** Court found delays attributable to the pandemic to be excludable time because **"[n]o amount of due diligence on the part of the Commonwealth could have possibly hastened [the defendant]'s trial date." Id.** (emphasis added). "In other words, when delays occur as a result of circumstances outside of the Commonwealth's control, those delays are excludable from the Rule 600 calculation." **Walker**, 331 A.3d at 47.

Appellant argues that because the Commonwealth filed its criminal complaint in October 2021, three months after the courts fully opened following its emergency shutdown due to the pandemic, the trial court erred

- 9 -

in relying on the COVID-19 backlog to deny his Rule 600 motion. Appellant's Br. at 22-23. After discussing the facts of *Graves*, *supra*, Appellant argues that the Commonwealth "had an affirmative duty to make efforts to schedule the trial before October 27, 2022," and the record is "devoid of any evidence" that the Commonwealth attempted to contact court administration to request a court date. Appellant's Br. at 22-23 (citing *Commonwealth v. Hawk*, 597 A.2d 1141 (Pa. 1991). Appellant also contends that the fact that he did not receive full discovery until March 15, 2023, shows the Commonwealth failed to act with due diligence. *Id.* at 23-25. He concludes that "[p]ursuant to *Graves*, *supra*, the Commonwealth simply failed to establish its due diligence" and, therefore, "[c]ourt delays attributable to the COVID-19 backlog should not have been considered and defendant's Motion to Dismiss Pursuant to Rule 600 should have been granted." *Id*. at 25.

Appellant's reliance on *Graves* is misplaced. In *Graves*, the Commonwealth filed the appellant's criminal complaint after the courts had reopened following the pandemic. Numerous delays occurred and Graves filed a Rule 600 motion. After a hearing, the court granted the motion and dismissed the case with prejudice. On appeal, a panel of this Court affirmed, concluding that, based on the evidence presented at the hearing on the motion, the court did not abuse its discretion in dismissing the case. The evidence presented at the *Graves* hearing pertained to delays which included time between the filing of the criminal complaint and the defendant's arrest, continuation of the preliminary hearing after a police detective failed to

appear, and whether the Commonwealth exercised due diligence in obtaining and providing discovery to the defendant. *See Graves*, 328 A.3d at 1009-1012. Significantly, the *Graves* case did not include any evidence of delay caused by an administrative backlog redounding from the pandemic.[6]

In Appellant's case, however, the trial court heard extensive evidence from the Montgomery County Deputy Court Administrator about the significant backlog of cases caused by the shutdown of the courts in Montgomery County due to the pandemic, how it scheduled cases after the pandemic in order to address its extensive backlog, how court administration generally prioritized cases for preliminary hearings, the lack of judges available to address the cases on backlog and the subsequent impact that shortfall had on scheduling all cases for pre-trial conferences and trials, and the court administrator's inability to accommodate every possible request for an earlier listing. *See* N.T. Motion, 10/16/23, at 16-24. These facts distinguish Appellant's case from *Graves* and, thus, we conclude *Graves* is inapposite.

In addressing Appellant's arguments, the trial court opined that, following *Lear*, *supra*, Appellant's assertion that "the Commonwealth did not act with due diligence, is now moot[.]" Tr. Ct. Op. at 6. The court explained

---

[6] The *Graves* court also concluded that the period between the date the court scheduled the trial (two months prior to adjusted run date) and the trial date (which was two months after the adjusted run date) would not be excluded because the evidence "failed to demonstrate" that the Commonwealth "complied with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case." 328 A.3d at 1011-1012 (quoting *Harth*, 252 A.3d at 603).

that "while the criminal complaint in this case was filed on October 27, 2021, after the courthouse had fully reopened in July 2021, the prior 'court-wide shutdown' precipitated by the pandemic, which was followed by a 'court-wide slowdown[,]' caused the delay in bringing defendant to trial." *Id.* (quoting *Lear*, 325 A.3d at 563). The court concluded that the evidence presented at the hearing on the Rule 600 motion "supports the conclusion that the court-wide scheduling backlog in existence from the time this case arrived in this court was the cause of defendant not being brought to trial as of the filing of his Rule 600 motion." Tr. Ct. Op. at 8.

In addition, the trial court concluded that "against the backdrop" of the court's administrative backlog, the Commonwealth's evidence demonstrated that it exercised "reasonable diligence [ ] under the circumstances" in bringing the case to trial. Tr. Ct. Op. at 11-13. Specifically, the court found that the fact that "the discovery conveyed in June 2022 was emailed to an address no longer used by defendant's counsel does not demonstrate a lack of due diligence on the part of the Commonwealth given that the address had been used multiple times in the past and no 'bounceback' had been received." *Id*. at 13. The court also found that "no evidence from the [Rule 600] hearing suggested . . . that the Commonwealth engaged in conduct at any point during the life of this case designed to frustrate defendant's speedy trial rights." *Id*. at 14.

Based on our review, we discern no abuse of discretion in the court's dismissal of Appellant's Rule 600 motion. In light of *Lear* and the delays that

were not caused by the Commonwealth, the Commonwealth's diligence is not a factor to be considered in calculating whether Appellant sustained a Rule 600 violation. Moreover, as explained below, we conclude that Appellant's Rule 600 motion was filed prematurely.

The Commonwealth filed its criminal complaint on October 27, 2021; the mechanical run date for Appellant's trial was, thus, October 27, 2022. The delays discussed above, however, resulted in an adjusted run date significantly beyond that date. Specifically, when the magisterial district court *sua sponte* continued the preliminary hearing, the resulting 21-day delay adjusted the run date to November 19, 2022. Following Appellant's waiver of his arraignment on January 11, 2022, there was a delay of 398 days before the court scheduled a pre-trial conference. Based on the evidence presented at the Rule 600 hearing, which the trial court found credible, this delay was not caused by the Commonwealth. As a result, pursuant to **Lear** and **Walker**, that 398 days is excludable and the adjusted run date, thus, became December 22, 2023. Accordingly, Appellant's Rule 600 Motions filed on August 18, 2023, and September 21, 2023, were premature.

Having found the trial court properly exercised its discretion in dismissing Appellant's Rule 600 motion, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2025